UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY, and
GEICO CASUALTY CO.,

                    Plaintiffs,

          - against -

MICHAEL GERLING, M.D., NY
ORTHOPEDICS, P.C., GERLING
INSTITUTE NJ, P.C., SPINE HEALTH
ORTHOPEDIC, P.C., SPINE CONSULT NJ,
P.C., JOSEPH PYUN, M.D., IGOR DOVMAN,
VLADIMIR GRANOVSKIY a/k/a WALTER
GRAN, and CAMPIRO, INC.,

                    Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-7693 (PKC) (MMH)

PAMELA K. CHEN, United States District Judge:

On October 16, 2023, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Co., and GEICO Casualty Co. (collectively, "GEICO") commenced this action alleging RICO violations, 18 U.S.C. §§ 1962(c), 1962(d); common law fraud; aiding and abetting fraud; unjust enrichment; violations of the New Jersey Insurance Fraud Prevention Act, N.J. Stat. Ann. 17:33A-1 *et seq.*; and seeking a declaratory judgment, 28 U.S.C. §§ 2201, 2202, based on an alleged scheme to collect reimbursement on thousands of fraudulent no-fault insurance claims. (Complaint, Dkt. 1 ("Compl.") ¶¶ 1–3, 250–405.) On January 18, 2024, GEICO moved against Defendants Michael Gerling, M.D. ("Gerling"); NY Orthopedics, P.C. ("NY Orthopedics"); Gerling Institute NJ, P.C. ("Gerling Institute"); Spine Consult NJ, P.C. ("Spine Consult"); and Spine Health Orthopedic, P.C. ("Spine Health") (collectively, the "Gerling Defendants"), seeking an order, pending disposition of GEICO's claims in this action, (1) staying

all pending no-fault insurance collection arbitrations and state court collections lawsuits that have been commenced against GEICO by or on behalf of the Gerling Defendants; and (2) enjoining the Gerling Defendants, and anyone acting or purporting to act on their behalf, from commencing any further no-fault insurance collection arbitrations or collections litigation against GEICO. (*See generally* Pls.' Mem. of Law, Dkt. 43-1 ("Pls.' Mem.").) For the reasons set forth below, the motion is granted in full.

## BACKGROUND

### I. New Jersey's No-Fault Insurance Laws

The New Jersey Insurance Fraud Prevention Act ("IFPA") allows insurance companies to bring an action relating to fraudulent insurance claims in any court of competent jurisdiction. *See* N.J. Stat. Ann. § 17:33A-7(a). A person violates the IFPA if he or she "[p]resents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim." N.J. Stat Ann. § 17:33A-4(a)(1). Although New Jersey generally requires arbitration for no-fault insurance claims, New Jersey courts have repeatedly found that claims under the IFPA may be heard in state or federal courts. *See Gov't Emps. Ins. Co. v. Elkholy*, No. 21-16255 (MAS) (DEA), 2022 WL 2373917, at *9–10 (D.N.J. June 30, 2022) (citing *Allstate N.J. Ins. Co. v. Lajara*, 117 A.3d 1221, 1232 (N.J. 2015)) ("[C]ourts routinely uphold the IFPA's absolute mandate for judicial resolution notwithstanding contractual clauses that would otherwise require arbitration of IFPA claims."); *see also Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 492 (D.N.J. 2018) ("The [IFPA] is not preempted by [no-fault] arbitration rules.").

## II. Factual Background

GEICO is an authorized automobile insurer in New York and New Jersey. (Compl. ¶ 8.) GEICO alleges that the Gerling Defendants participated in an unlawful patient brokering and referral scheme wherein the Gerling Defendants provided fraudulent, medically unnecessary services (the "Fraudulent Services") to individuals who claimed that they were involved in automobile accidents and covered by no-fault insurance policies issued by GEICO (the "Insureds"). (*Id.* ¶¶ 5–6.) In turn, the Gerling Defendants submitted or caused to be submitted thousands of fraudulent no-fault insurance charges for reimbursement by GEICO. (*Id.* ¶ 1.)

According to GEICO, Gerling entered into a patient brokering and referral scheme with Defendants Igor Dovman ("Dovman"), Vladimir Granovskiy a/k/a Walter Gran ("Gran"), and Campiro, Inc. ("Campiro") (collectively, the "Campiro Defendants").[1] The Campiro Defendants and various personal injury attorneys "would cause patients to be referred to Gerling and NY Orthopedics for surgical procedures," and the Campiro Defendants would pay Gerling "to perform invasive, expensive, and medically unnecessary surgeries." (*Id.* ¶ 98.) GEICO alleges that "the surgical procedures performed by Gerling as part of his agreement" were not designed "to treat or otherwise benefit the surgical patients," but to "create billing opportunities for Gerling and his practices, including NY Orthopedics," and to "artificially drive up the supposed value of the patients' prospective personal injury settlements." (*Id.* ¶ 100.) GEICO further alleges that NY Orthopedics (a New York medical professional corporation) and Gerling Institute (a New Jersey medical professional corporation) operated in New Jersey and New York, respectively, in violation

---

[1] Beyond the Gerling Defendants and Campiro Defendants, GEICO brings suit against Defendant Joseph Pyun, M.D. ("Pyun") (collectively, "Defendants"). The allegations against Pyun do not materially bear on GEICO's instant motion.

3

of each state's law, (*id.* ¶¶ 10–11, 73–87), and that Dovman has previously been found liable for engaging in no-fault insurance fraud and patient brokering schemes, (*id.* ¶¶ 18–22).

To support its separate but related claim that the Gerling Defendants billed GEICO for treatments provided "pursuant to pre-determined fraudulent protocols," GEICO alleges that its four exhibits attached to the Complaint—spreadsheets detailing more than 5,200 claims billed to GEICO for Fraudulent Services provided by the Gerling Defendants to Insureds—"set forth a large representative sample of the fraudulent claims." (*Id.* ¶ 6; *see* Dkts. 1-3, 1-4, 1-5, 1-6.) GEICO references these exhibits throughout its Complaint. (*See, e.g.*, Compl. ¶ 182 ("virtually all" of the claims in the exhibits "involved [Insureds] in relatively minor accidents"); *id.* ¶ 176 ("[I]n the vast majority of claims identified in Exhibits '1' – '3', during the initial examinations the Insureds did not present with any significant continuing medical problems that legitimately could be traced to an underlying automobile accident."); *id.* ¶ 204 (for "virtually all" of the Exhibit 1 through 3 claims, the Gerling Defendants "falsely represented that the Insureds presented with problems of moderate to high severity, when in fact the Insureds either did not have any genuine presenting problems at all" at the time of examination "or else their presenting problems were minimal").)

In further support, the Complaint provides 20 examples of billing by the Gerling Defendants for initial examinations purportedly presenting moderate-to-high severity medical problems, yet where the Insureds were involved only in low-speed, low-impact collisions. (*Id.* ¶¶ 142–43.) GEICO further provides five examples of billing by the Gerling Defendants where the Insureds underwent spinal surgical procedures regardless of whether those procedures were warranted in the first instance (*id.* ¶¶ 178–79); 10 examples of billing by the Gerling Defendants where the Insureds were "recommended a substantially identical course of medically unnecessary 'treatment'" for a single accident "despite the fact that they were differently situated" (*id.* ¶¶ 185–

86); 10 examples of billing for unnecessary follow-up examinations (*id.* ¶¶ 201–03); five examples of billing where the Insureds were diagnosed with lingering soft tissue injuries long after those injuries should have resolved (*id.* ¶¶ 211–12); 10 examples of billing for "surgical procedures to Insureds who did not have any serious symptoms secondary to any automobile accident that legitimately would warrant the procedures" (*id.* ¶¶ 231–32); and five examples of false representations by the Gerling Defendants, in surgical reports, that Insureds underwent "a trial of pain management services" prior to a spinal surgical procedure "when in fact they had not" (*id.* ¶¶ 237–38). GEICO also provides 15 examples of billing by the Gerling Defendants in violation of New Jersey law, for self-referred surgical procedures that were allegedly performed off-site, which are ineligible for no-fault benefits. (*Id.* ¶¶ 62–68, 221–28.)

All told, GEICO alleges that the Gerling Defendants' bills and treatment reports were false and misleading in four material respects: (1) they represented that the Gerling Defendants were in compliance with all significant statutory and regulatory requirements, and therefore were eligible for no-fault reimbursement, when they were not; (2) they represented that the Fraudulent Services were provided in compliance with all significant statutory and regulatory requirements, when they were not; (3) they represented that the Fraudulent Services were medically necessary, and sometimes represented that they were performed, when they were not; and (4) they misrepresented and exaggerated the level and nature of services provided and the amounts reimbursable for those Fraudulent Services. (*Id.* ¶ 241.)

Through this lawsuit, GEICO seeks to recover more than $2,200,000 already paid to Defendants under the alleged fraudulent scheme and a declaratory judgment that it is not obligated to reimburse more than $75,000 in pending claims submitted by or on behalf of the Gerling Defendants. (*See id.* ¶¶ 1, 3, 248, 251.)

5

## LEGAL STANDARD

The Court evaluates GEICO's request for an order staying pending collection actions and enjoining future collection actions under the same standard as a request for a preliminary injunction. *Gov't Emps. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 490 (E.D.N.Y. 2021); *see Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013). To justify a preliminary injunction, a movant must show:

> (1) irreparable harm absent injunctive relief; and (2) "either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor."

*Elzanaty*, 929 F. Supp. 2d at 217 (quoting *Metro. Taxicab Bd. of Trade v. City of N.Y.*, 615 F.3d 152, 156 (2d Cir. 2010)); *see Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 183–84 (2d Cir. 2019). "The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (per curiam) (internal quotation marks, alterations, and citations omitted); *accord Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 449 (E.D.N.Y. 2020); *Gov't Emps. Ins. Co. v. Cean*, No. 19-CV-2363 (PKC) (SMG), 2019 WL 6253804, at *4 (E.D.N.Y. Nov. 22, 2019).

## DISCUSSION

I.  **Pending and Future Collection Arbitrations**

The Court first considers GEICO's request with respect to pending and future arbitrations. The allegations and causes of action in this matter are analogous to those in other matters where pending and future collection arbitrations have been enjoined in connection with GEICO filing a fraud action in federal court. *See, e.g.*, *Gov't Emps. Ins. Co. v. Landow*, No. 21-CV-1440 (NGG) (RER), 2022 WL 939717, at *13–14 (E.D.N.Y. Mar. 29, 2022) (issuing injunction where plaintiffs

6

alleged widespread fraudulent billing under no-fault insurance laws); *Gov't Emps. Ins. Co. v. Beynin*, No. 19-CV-6118 (DG) (PK), 2021 WL 1146051, at *10 (E.D.N.Y. Mar. 25, 2021) (same); *Gov't Emps. Ins. Co. v. Moshe*, No. 20-CV-1098 (FB) (RER), 2020 WL 3503176, at *4 (E.D.N.Y. June 29, 2020) (same). Further, GEICO's arguments in support of an injunction in this matter are virtually indistinguishable from those advanced in such cases. *See Beynin*, 2021 WL 1146051, at *10; *Moshe*, 2020 WL 3503176, at *4; *see also Gov't Emps. Ins. Co. v. Zaitsev*, No. 20-CV-3495 (FB) (SJB), 2021 WL 3173171, at *2–3 (E.D.N.Y. July 27, 2021). In line with those cases and others, and for the reasons explained below, the Court grants GEICO's request to stay all pending collection arbitrations and to enjoin future collection arbitrations.[2]

### A.     Irreparable Harm Absent Injunctive Relief

GEICO has demonstrated that it would face irreparable harm if the Gerling Defendants are permitted to continue pursuing collection arbitrations during the pendency of this lawsuit because those arbitration actions "might eventually be, at best, inconsistent with th[e] Court's ruling, and at worst, essentially ineffective." *Elzanaty*, 929 F. Supp. 2d at 222; *see, e.g., Allstate Ins. Co. v. Pierre*, No. 23-CV-6572 (NGG) (LB), 2024 WL 85088, at *1–2 (E.D.N.Y. Jan. 8, 2024) (finding irreparable harm "where, as here, 'an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending

---

[2] In similar cases, district courts have found that they have the authority to enjoin pending and future arbitrations. *See State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 233 (E.D.N.Y. 2018) (citing *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802, 2018 WL 6031156, at *4 (E.D.N.Y. Nov. 16, 2018) (finding "that it would frustrate the purposes of the Federal Arbitration Act and judicial economy if the Act is interpreted to preclude the Court from enjoining Defendants' No-Fault collection arbitrations")); *see also Gov't Emps. Ins. Co. v. Tolmasov*, 602 F. Supp. 3d 380, 392 (E.D.N.Y. 2022); *Relief Med.*, 554 F. Supp. 3d at 491–95; *Beynin*, 2021 WL 1146051, at *8–9. The Gerling Defendants do not dispute this proposition, nor cite any contrary authority. The Court concludes that it has the authority to grant GEICO's request to stay and enjoin collection arbitrations until this federal court action is resolved.

7

declaratory judgment action'" (quoting *Parisien*, 352 F. Supp. 3d at 233)); *Beynin*, 2021 WL 1146051, at *6 ("[A]llowing hundreds of arbitrations to be 'heard by a mix of arbitrators, each of whom will likely come to their own independent and contradictory conclusions that may be rendered ineffective by this Court, will result in harm to GEICO from which it cannot recover.'" (quoting *Elzanaty*, 929 F. Supp. at 222)); (*see* Pls.' Mem. at 10–11; Reply, Dkt. 45 at 2–3).  This is the kind of harm repeatedly recognized as irreparable by courts in this Circuit.  *Wellmart RX, Inc.*, 435 F. Supp. 3d at 450 ("The conclusions and reasoning in *Mayzenberg* and *Elzanaty* have been reiterated time and again in this Circuit.") (collecting cases).

The Court is not persuaded to the contrary by the Gerling Defendants' reliance on *Allstate Insurance Co. v. Harvey Family Chiropractic*, which affirmed the denial of a stay.  (Mem. of Law in Opp'n to Pls.' Mot., Dkt. 44 ("Opp'n"), at 4–5 (citing 677 F. App'x 716 (2d Cir. 2017) (summary order)).)  *Harvey* has already been distinguished in similar cases for not addressing the risk of irreparable harm posed by inconsistent judgments.  *See, e.g.*, *Wellmart RX, Inc.*, 435 F. Supp. 3d at 451 ("[T]he Second Circuit [in *Harvey*] said nothing of the risk of inconsistent judgments, or of the risk that money damages would not be available if plaintiff ultimately obtained a declaratory judgment."); *Beynin*, 2021 WL 1146051, at *5 (distinguishing *Harvey* because it did not address the risk of inconsistent judgments); *Moshe*, 2020 WL 3503176, at *2 ("*Harvey* does not preclude granting an injunction to avoid inconsistent judgments.").  The Court agrees that *Harvey* is distinguishable for the same reason, as are other cases that the Gerling Defendants rely upon.  (*See* Opp'n at 6 (first citing *Benaroya v. Nationwide Mut. Ins. Co. of Am.*, No. 18-CV-4823 (CLP) (JBW), 2020 WL 1863287, at *6 (E.D.N.Y. Jan. 22, 2020) (denying injunction where plaintiff failed to articulate the harm from "having to litigate . . . one set [of cases] in arbitration and one set before th[e] Court"), then citing *Gov't Emps. Ins. Co. v. Adams Chiropractic Ctr.*,

8

*P.C.*, No. 19-20633 (SDW) (ESK), 2020 WL 3496932, at *2 (D.N.J. June 29, 2020) (denying injunction where plaintiffs merely faced risk of economic injury)).)

The Court pauses, however, with respect to the Gerling Defendants' citation of *Government Employees Insurance Company v. Mahmood*, a recent opinion denying a stay of pending arbitrations in a similar case. (*Id.* (citing No. 23-CV-4388 (NGG) (TAM), 2024 WL 113958, at *6 (E.D.N.Y. Jan. 10, 2024)).) Ultimately, the Court finds *Mahmood* distinguishable.

Most significantly, the Court finds that, here, GEICO alleges "evidence of fraud" that brings this case closer to cases that *Mahmood* itself distinguished. *See Mahmood*, 2024 WL 113958, at *6 (citing *Gov't Emps. Ins. Co. v. Barakat*, No. 22-CV-7532 (NGG) (RML), 2024 WL 22769, at *3–6 (E.D.N.Y. Jan. 2, 2024), and *Landow*, 2022 WL 939717, at *2–3). Beginning with GEICO's Complaint, GEICO alleges that the Gerling Defendants—including the Gerling Institute and NY Orthopedics, which allegedly operated in violation of New York and New Jersey law, respectively—engaged in fraudulent billing practices involving payments of money from Dovman, who was recently found liable for fraud. (Compl. ¶¶ 73–87); *cf. Mahmood*, 2024 WL 113958, at *6 (distinguishing *Barakat* as a case where "an unlicensed layperson illegally owned and controlled the defendants' practices and where there was evidence that the defendants were funneling money to an individual recently indicted for fraud"). GEICO also alleges here that the Gerling Defendants violated New Jersey law by self-referring surgical procedures that were in fact performed off-site. (Compl. ¶¶ 68, 221–28); *cf. Mahmood*, 2024 WL 113958, at *6 (distinguishing *Landow* as a case where the "defendant violated licensing requirements by using independent contractors to offer services while the defendant physician resided out of the state and was unable to supervise the practice"). The detailed nature of these allegations suggests "evidence of fraud"

9

beyond the "ordinary" level, thereby distinguishing it from *Mahmood*. *See Mahmood*, 2024 WL 113958, at *6.

But there is more. In contrast to *Mahmood*, GEICO here submits documentary evidence in support of its claims. *See Mahmood*, 2024 WL 113958, at *3 (noting that GEICO had not provided supporting documentation). To be specific, GEICO has included "copies of the very checks referenced in GEICO's Complaint" suggesting the existence of an illicit patient brokering and kickback scheme in conjunction with the Campiro Defendants, (Reply at 6), along with an affidavit and exhibits from an individual named Diana Sheydvasser suggesting that Dovman—with whom the Gerling Defendants conducted business—has engaged in money laundering. (Pls.' Mem. at 11; *see generally* Sheydvasser Aff., Dkt. 43-10.) Although the Gerling Defendants, like the defendants in *Mahmood*, are not "insolvent, [have not] ceased operations, and/or [are not] facing related criminal charges," the Court agrees with GEICO that "there is a heightened risk of irreparable harm inasmuch as the Defendants' assets are subject to secretion" based on "the Gerling Defendants['] . . . financial transactions with Dovman and his company, Campiro." (Pls.' Mem. at 12.)

Lastly, the Court does not find the "small" number of pending arbitrations to be dispositive.[3] (*See* Opp'n at 6); *Mahmood*, 2024 WL 113958, at *6. Permitting the existing arbitrations to proceed and allowing countless other arbitrations to be initiated in pursuit of unpaid claims "would likely subject GEICO to 'independent and contradictory conclusions' that

---

[3] The Court notes the parties' own uncertainty regarding the number of pending collection proceedings. (*Compare* Pls.' Mem. at 6 (asserting, based on sworn Asmus Declaration attached as an exhibit, that there are 47 pending lawsuits and four pending arbitrations), *with id.* at 22 (asserting that there are "over fifty state court collection lawsuits pending against GEICO"); *see also* Opp'n at 1 (asserting that there are "over 80 arbitrations" pending against GEICO).) For purposes of this motion, the Court will assume that the amounts in the Asmus Declaration, which was made under penalty of perjury, are correct. *See Patel*, 2024 WL 84139, at *5 (doing the same).

ultimately may 'be rendered ineffective by this Court,' pending the disposition of GEICO's declaratory judgment claim." *Gov't Emps. Ins. Co. v. Advanced Comprehensive Lab'y, LLC*, No. 20-CV-2391 (KAM), 2020 WL 7042648, at *4 (E.D.N.Y. Dec. 1, 2020) (quoting *Mayzenberg*, 2018 WL 6031156, at *5); *see Barakat*, 2024 WL 22769, at *6 n.5 (noting that "[the] court has not identified any decisions in which courts have held that irreparable injury depends on the number of potentially inconsistent judgments"); *State Farm Mut. Auto. Ins. Co. v. Eclipse Med. Imaging, P.C.*, No. 23-CV-3124 (OEM) (RML), 2023 WL 7222827, at *6 (E.D.N.Y. Nov. 2, 2023) ("[T]he number of ongoing actions brought against an insurer is not in itself dispositive of whether the irreparable harm prong is satisfied.").

For all of these reasons, the Court finds "that litigating the relatively small number of disputed arbitrations would irreparably harm [GEICO] absent a stay," through the "risk of inconsistent judgments . . . *in addition to* money damages [potentially] not being available." *See Mahmood*, 2024 WL 113958, at *6 (citing *Barakat*, 2024 WL 22769, at *1–2). Thus, the Court finds that GEICO has shown irreparable harm.

### B. Serious Questions Going to the Merits

GEICO has raised serious questions going to the merits. *See Elzanaty*, 929 F. Supp. 2d at 217. In its 112-page Complaint, GEICO alleges in great detail a fraudulent scheme involving the Gerling Defendants, whereby medically unnecessary procedures were performed pursuant to an illegal patient-brokering scheme and pre-determined fraudulent protocols, and where bills for reimbursement were submitted with misrepresentations in order to maximize the Gerling Defendants' financial gain. (Compl. ¶¶ 98, 100, 109.) The Complaint further recites dozens of specific examples to demonstrate the Gerling Defendants' alleged fraudulent activity. (*Id.* ¶¶ 143, 179, 186, 202–03, 212, 227, 232, 238.) GEICO further attaches exhibits, referenced throughout the Complaint, that allegedly provide voluminous "representative sample[s]" of the fraudulent

11

claims at issue. (*Id.* ¶ 6.) These allegations raise a serious question as to the Gerling Defendants' liability as a result of fraudulent activity. *See Relief Med.*, 554 F. Supp. 3d at 499–500 (collecting similar cases).

For these reasons, the Court rejects the Gerling Defendants' patently frivolous objection that "GEICO has not provided substantive proofs [sic] for the Court to consider other than its unverified [Complaint]." (Opp'n at 8–9.) "[A] complaint alone can be sufficient to grant an injunction, [and] [t]his is particularly true where . . . the complaint comprehensively details regulatory violations, unnecessary medical services, and unlawful referrals." *Beynin*, 2021 WL 1146051, at *7 (alterations in original) (quoting *Moshe*, 2020 WL 3503176, at *2). Here, GEICO's Complaint has "adequately detailed a complicated scheme of alleged fraud activity" that does not rest on "mere hypotheticals." *Cean*, 2019 WL 6253804, at *5 (citations omitted); *id.* (finding serious questions going to the merits where plaintiff "alleged, in significant detail, facts relating to Defendants' fraudulent activity in its Complaint, describing fraudulent medical treatment, deceitful billing protocols, and an illegal kickback and referral scheme"); (*see, e.g.*, Compl. ¶¶ 5– 6, 98–100, 142–43, 109, 176–79, 182–86, 201–04, 211–12, 226–27, 231–32, 237–38). But what is more, GEICO has provided evidentiary support for its allegations, not just with exhibits attached to the Complaint, but with exhibits attached in support of this motion. (*See generally* Dkts. 43-2, 43-3, 43-4, 43-5, 43-6, 43-7, 43-8, 43-9, 43-10, 43-11.) Inexplicably, the Gerling Defendants ignore the existence of these exhibits. (Opp'n at 1 ("GEICO merely relies upon the allegations contained in the complaint."); *id.* at 8–10 (arguing that GEICO's "unverified" complaint is insufficient to support injunctive relief).)

By specifically alleging an illicit patient brokering and referral scheme, describing in detail the unnecessary and substantially identical treatments provided to dozens of Insureds, and

identifying specific types of billing misrepresentations—with documented examples—GEICO has raised "serious questions going to the merits." *See Beynin*, 2021 WL 1146051, at *7; *Cean*, 2019 WL 6253804, at *5. GEICO has met its burden on this prong of the analysis.

C.     **Balance of the Hardships**

Finally, GEICO has demonstrated that the balance of the hardships tips decidedly in its favor. *See Elzanaty*, 929 F. Supp. 2d at 217; (Pls.' Mem. at 19). As explained above, if pending collection arbitrations are not stayed and future collection proceedings are not enjoined, GEICO will suffer irreparable harm. By contrast—and despite the Gerling Defendants' hyperbolic argument that they would be forced "to work for free, while GEICO denies claims," (Opp'n at 10)—"[i]f the preliminary injunction is granted and [GEICO] fails to prove its claims, then, at worst, [the Gerling] Defendants' recovery of the no-fault benefits to which they are entitled will be delayed." *See Parisien*, 352 F. Supp. 3d at 234; *see also Wellmart RX, Inc.*, 435 F. Supp. 3d at 455.

Although the Gerling Defendants argue that it is they "who will suffer irreparable harm if this motion is granted" because the policies under which they seek reimbursement will be exhausted during the pendency of an injunction, (Opp'n at 10–11 (asserting that "policies can be exhausted very quickly" and that "GEICO is trying to run out the clock")), the Court finds this argument to be "speculative at best considering [the Gerling] [D]efendants do not identify any policies nearing exhaustion," nor point to any courts that have accepted such a theory of hardship. *See Moshe*, 2020 WL 3503176, at *3; *see also State Farm Mut. Ins. Co. v. Metro Pain Specialists P.C.*, No. 21-CV-5523 (MKB), 2022 WL 1606523, at *20 (E.D.N.Y. May 20, 2022); *Gov't Emps. Ins. Co. v. Wallegood*, No. 21-CV-1986 (PKC) (RLM), Mem. & Order., ECF No. 36 at 13–14 (E.D.N.Y. July 16, 2021); *Gov't Emps. Ins. Co. v. Avonora, Inc.*, No. 23-CV-3409 (ARR) (MMH), Op. & Order, ECF No. 40 at 9 (E.D.N.Y. Sept. 18, 2023); *Gov't Emps. Ins. Co. v. Khanan*, No.

13

23-CV-6191 (ARR) (MMH), Op. & Order, ECF No. 49 at 9 (E.D.N.Y. Nov. 17, 2023). Moreover, "granting the stay and injunction will actually save all parties time and resources" because "all claims can be efficiently and effectively dealt with in a single declaratory judgment action," rather than in piecemeal fashion. *Gov't Emps. Ins. Co. v. Patel*, No. 23-CV-2835 (KAM) (PK), 2024 WL 84139, at *10 (quoting *Cean*, 2019 WL 6253804, at *5); *accord Barakat*, 2024 WL 22769, at *7 (same); *Mayzenberg*, 2018 WL 6031156, at *7 ("[I]t is obviously more efficient and beneficial for Defendants if all of their claims are resolved in one action, rather than in hundreds of different proceedings."). The Court cannot conclude that the Gerling Defendants' speculation about exhausted policies demonstrates any hardship that will befall them if the preliminary injunction is granted or diminishes the hardship that tips decidedly in GEICO's favor if relief is not granted.

For all of these reasons, the Court concludes that GEICO has demonstrated that a preliminary injunction staying all pending collection arbitrations and enjoining future collection arbitrations is justified.

## II. Pending and Future Collection Lawsuits

Next, the Court considers GEICO's request to stay and enjoin pending and future collection lawsuits. The Court finds that GEICO's request is justified and grants the request.

The All Writs Act permits a federal court to "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The Anti-Injunction Act ("AIA"), however, limits a federal court's authority to stay proceedings in state court "except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." *Parisien*, 352 F. Supp. 3d at 224 (quoting 28 U.S.C. § 2283).

Here, GEICO contends that the AIA's in-aid-of-jurisdiction exception applies because the systemic fraud that it alleges may not be apparent if denial-of-reimbursement claims are examined

14

on a case-by-case basis in state court, suggesting that a state court judgment might diverge in ways that do not "peacefully coexist" with this Court's ultimate judgment. (*See* Pls.' Mem. at 21–23.) The Gerling Defendants do not dispute GEICO's argument. (*See* Opp'n at 1 (arguing against injunction for pending and future arbitrations, but not mentioning lawsuits or AIA); *see also Tolmasov*, 602 F. Supp. 3d at 392 (granting injunction where defendants failed to challenge court's authority to issue injunction under AIA). Although some district courts within this circuit have disagreed that the AIA's in-aid-of-jurisdiction exception permits federal courts to stay pending state court litigation, *New Falls Corp. v. Soni Holdings, LLC*, No. 19-CV-449 (HG) (LGD), 2022 WL 20058522, at *5 (E.D.N.Y. Sept. 13, 2022); *Gov't Emps. Ins. Co. v. Granovsky*, No. 19-CV-6048 (EK) (RER), 2022 WL 1810727, at *3–6 (E.D.N.Y. June 2, 2022), the Court is more persuaded by the line of decisions explaining—in analogous circumstances—the existence of such authority. *Parisien*, 352 F. Supp. at 229–32; *see Patel*, 2024 WL 84139, at *12–13; *State Farm Mut. Auto. Ins. Co. v. Herschel Kotkes, M.D., P.C.*, No. 22-CV-3611 (NRM) (RER), 2023 WL 4532460, at *13 (E.D.N.Y. July 13, 2023); *Tolmasov*, 602 F. Supp. 3d at 392.

Thus, the Court agrees with GEICO that the "fragmentation" of this dispute into approximately 50 or more lawsuits "would nullify [GEICO]'s efforts to prove fraud at a systemic level, impair a federal declaratory judgment action over which the Court has taken jurisdiction precisely to eliminate such fragmentation, and deprive [GEICO] of an avenue toward complete relief in *any* court." (Pls.' Mem. at 21 (quoting *Wallegood*, No. 21-CV-1986 (PKC) (RLM), Mem. & Order, ECF No. 36 at 19 (E.D.N.Y. July 16, 2021)).) "[A]s a practical matter [GEICO may not] have a fair opportunity to present its claims unless it is permitted to direct the trier of fact to *all* of the claims at issue." *Parisien*, 352 F. Supp. 3d at 229. Because any judgment in a state court no-fault proceeding "will be *res judicata* for purposes of this action," if GEICO "suffers an adverse

15

judgment in state court, 'this court will be bound to adhere to that decision, even though [the state] court [may] not [have been] able to consider what seems to be the heart of plaintiff's case.'" *Id.* (alterations in original) (citations omitted). Such a result would "destroy the utility" of a declaratory judgment by this Court, the purpose of which is to provide broad relief and "avoid a multiplicity of lawsuits and piecemeal litigation." *Id.* at 230 (citing *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 337 (2d Cir. 1985) (finding an injunction justified where, *inter alia*, multiple state court actions would "destroy the utility of the multidistrict forum otherwise ideally suited to resolving such broad claims")). Moreover, an injunction in this case will serve public policy in combatting no-fault insurance fraud. *See id.* at 231 (quoting *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977) (Rehnquist, J., plurality)). Indeed, "New York courts routinely stay collection actions pending declaratory judgment proceedings such as this one." *Id.* at 232 (collecting cases).

Based on GEICO's allegations, an order staying the pending collection lawsuits and enjoining future collection lawsuits is justified. Although the general rule is "that an *in personam* state court action may not be enjoined *merely because* it is duplicative of, or conflicts with, a prior federal judgment," *United States v. Schurkman*, 728 F.3d 129, 138 (2d Cir. 2013) (emphasis added), GEICO makes no such argument, and a stay may be warranted where a prospective state court judgment may not "peacefully coexist with the district court's judgment," *see id.* at 139; *see also Parisien*, 352 F. Supp. 3d at 229 (granting injunction under in-aid-of-jurisdiction exception where plaintiffs alleged that defendants "systematically and concertedly administered treatments in a rote fashion, independent of the clinical needs of the patient, . . . to maximize reimbursements while minimizing the possibility of detection").

Under the circumstances, the Court concludes that it has the statutory authority to stay pending lawsuits and enjoin future lawsuits by the Gerling Defendants against GEICO during the pendency of this litigation, and that it should do so here. *Id.*; *see Gov't Emps. Ins. Co. v. Zilberman*, No. 20-CV-209 (FB) (RML), 2021 WL 1146086, at *3 (E.D.N.Y. Mar. 25, 2021) (granting preliminary injunction to, *inter alia*, stay defendants' pending civil collection lawsuits against GEICO).

### III.  Security Requirement

Finally, the Court concludes that GEICO's requested waiver of the security requirement under Federal Rule of Civil Procedure 65(c) ("Rule 65(c)") is appropriate. Although Rule 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security . . . to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," Fed. R. Civ. P. 65(c), an exception to Rule 65(c)'s security requirement "has been crafted for cases involving the enforcement of 'public interests' arising out of 'comprehensive federal health and welfare statutes,'" *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456 (quoting *Pharm. Soc. of State of N.Y., Inc. v. N.Y. State Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995)). Courts in this district have repeatedly reasoned that the enforcement of no-fault insurance statutes is in the public interest, as is the prevention of fraud on the healthcare system, and, accordingly, have waived the security requirement upon identifying the "systemic nature of the fraud alleged in the complaint and the lack of prejudice to defendants resulting from a preliminary injunction." *Id.*; *see also Zilberman*, 2021 WL 1146086, at *2; *Advanced Comprehensive Lab'y, LLC*, 2020 WL 7042648, at *8; *Mayzenberg*, 2018 WL 6031156, at *10. Here, the Complaint alleges fraud that is systemic in nature and the Gerling Defendants have failed to demonstrate that they will be prejudiced by the entry of a preliminary injunction. Therefore, the Court waives Rule 65(c)'s security requirement.

## CONCLUSION

The Court grants GEICO's request in full and issues an Order (1) staying all pending no-fault insurance collection arbitrations and state court collection lawsuits that have been commenced against GEICO by or on behalf of the Gerling Defendants; and (2) enjoining the Gerling Defendants, and anyone acting or purporting to act on their behalf, from commencing any further no-fault insurance collection arbitrations or new no-fault collection lawsuits against GEICO. This Order shall be in effect until the disposition of GEICO's declaratory judgment claim in this action. The security requirement under Federal Rule of Civil Procedure 65(c) is waived.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 26, 2024
　　　　Brooklyn, New York